# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WILLIE CLAY (#B-46468), ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 16-cv-05748 |
| v. ) | |
| ) | Judge Andrea R. Wood |
| MR. JOHNSON, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Willie Clay, a prisoner in the custody of the Illinois Department of Corrections currently incarcerated at Hill Correctional Center, has brought this lawsuit *pro se* pursuant to 42 U.S.C. § 1983, alleging that he was housed in a cell without a working toilet or any toilet paper while he was confined at Stateville Correctional Center ("Stateville") from March 30, 2016 to April 4, 2016. Clay has sued Defendants Michael Johnson, a Stateville correctional sergeant, and Randy Pfister, formerly Warden of Stateville. Now before the Court is Defendants' motion for summary judgment. (Dkt. No. 80.) For the reasons set forth below, Defendants' motion is granted in part and denied in part.

## BACKGROUND

### I.     Northern District of Illinois Local Rule 56.1

Before considering the merits of Defendants' motion, the Court must address the sufficiency (or lack thereof) of the parties' filings. Local Rule 56.1 sets out the procedure for presenting facts pertinent to a party's request for summary judgment pursuant to Federal Rule of Civil Procedure 56. Specifically, Local Rule 56.1(a)(3) requires the moving party to submit "a statement of material facts as to which the moving party contends there is no genuine issue and

that entitle the moving party to judgment as a matter of law." N.D. Ill. Local R. 56.1(a)(3); *see also Petty v. City of Chicago*, 754 F.3d 416, 420 (7th Cir. 2014). Each paragraph of the movant's statement of facts must include "specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph." N.D. Ill. L.R. 56.1(a). The opposing party then must file a response to each numbered paragraph in the moving party's statement, "including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R. 56.1(b)(3)(B). "All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." L.R. 56.1(b)(3)(C). The non-moving party also may present a separate statement of additional facts "consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." *Id*.

Because he is proceeding *pro se*, in addition to their summary judgment motion and supporting materials, Defendants also served Clay with the Court's form "Notice to Pro Se Litigant Opposing Motion for Summary Judgment," as required by Local Rule 56.2. (Dkt. No. 83.) The notice explained how Clay should respond to Defendants' summary judgment motion and Rule 56.1 Statement of Material Facts ("Rule 56.1 Statement"), and it also cautioned Clay that the Court would deem Defendants' factual contentions admitted if he failed to follow the procedures delineated in Local Rule 56.1. *See, e.g., Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Clay filed a response to the summary judgment motion in which he responds to Defendants' Rule 56.1 Statement in the manner set forth in the rule. Yet some of Clay's

responses and record citations do not properly create disputes of fact. For instance, Clay's response to paragraph six merely quibbles with the wording of Defendants' proffered statement of fact without identifying an actual dispute. A district court may insist on strict compliance with its local rules regarding summary judgment. *Metropolitan Life Ins. v. Johnson,* 297 F.3d 558, 562 (7th Cir. 2002). Therefore, the facts set forth in Defendants' Rule 56.1 Statement are deemed admitted to the extent they are supported by evidence in the record and not properly disputed by Clay. *See Keeton v. Morningstar, Inc.*, 667 F.3d 880, 884 (7th Cir. 2012); *Rao v. BP Prods. N. Am., Inc.,* 589 F.3d 389, 393 (7th Cir. 2009).

Because Clay is proceeding *pro se*, however, the Court has considered the factual assertions he makes in his response to Defendants' summary judgment motion but only to the extent he points to evidence in the record or could properly testify himself about the matters asserted. *See Boykin v. Dart*, No. 12 C 4447, 2014 WL 5611466, at *6 (N.D. Ill. Nov. 4, 2014) ("Although the Court is entitled to demand strict compliance with Local Rule 56.1, it ordinarily affords *pro se* plaintiffs significant leeway in responding to summary judgment filings."). Further, as Defendants' Rule 56.1 Statement omits some relevant facts regarding Clay's claims and Defendants' alleged involvement, the Court has supplemented their Rule 56.1 Statement with relevant facts from Clay's deposition. *See Bentz v. Hardy*, 638 F. App'x 535, 536 (7th Cir. 2016) (explaining that the plaintiff's failure to respond properly to Defendants' Rule 56.1 Statement was not fatal where the defendants principally relied on his deposition testimony in support of their motion, and his account of the conditions he endured was undisputed).[1]

---

[1] *Bentz* and *Wheeler v. Walker*, 303 F. App'x 365, 368 (7th Cir. 2008), cited below, are unpublished Seventh Circuit orders issued after January 1, 2007. Although not precedential, the orders provide useful guidance and points of comparison here. *See* Fed. R. App. P. 32.1(a); 7th Cir. R. 32.1(b).

3

Additionally, Defendants include a purported statement of undisputed fact in paragraph seven of their Rule 56.1 Statement for which they have failed to cite to any supporting material in the record. (*See* Def. L.R. 56.1 Stmt. of Undisputed Material Facts ("DSUMF") ¶ 7, Dkt. No. 82.) Parties have a right to expect that Local Rule 56.1 will be enforced and that facts not properly presented under the rule will be disregarded. *See Renta v. Cnty. of Cook*, No. 05 C 2995, 2011 WL 249501, at *1–2 (N.D. Ill. Jan. 26, 2011). Thus, the Court will not consider paragraph seven of Defendants' Rule 56.1 Statement as an undisputed material fact in deciding the instant motion.

## II.     Factual Background

Having laid the groundwork, the Court now turns to evidentiary record for summary judgment.

During the relevant time period, Clay was housed in cell K103 at Stateville's Northern Reception Center ("NRC"). (DSUMF ¶ 1.) Defendant Pfister was the Warden of the NRC and Defendant Johnson was a correctional officer with the rank of sergeant. (*Id*. ¶¶ 2, 3.) Clay was placed into cell K103 on March 30, 2016. (*Id*. ¶ 5.) That same day, he ran out of toilet paper and did not get any more until the "following week." (*Id*. ¶ 6.) The toilet in Clay's cell was not working and there was feces in the toilet when he was placed there. (*Id*. ¶ 8.) Clay wrote a grievance to Pfister on March 30 regarding his cell conditions but never received a response. (*Id*. ¶ 9.)

Clay testified during discovery that his toilet would not flush down; it would only back up. (DSUMF Ex. C at 30:20-24, Dkt. No. 82-3.) Clay also testified that the toilet was full of feces and swarming with bugs. (*Id*. at 22: 8-14.) According to Clay, he and his cellmate attempted to control the smell by covering the toilet with a garbage bag and a blanket. (*Id*. at 23:

3-8.) But when he and his cellmate flushed the toilet, it overflowed onto the floor and they had to clean it up. (*Id*. at 24:1-22.) Overflows happened three or four times during the time the toilet was broken. (*Id*.) As a result of the cell conditions, Clay was living in misery and threw up a couple times, but Clay does not know the cause of his vomiting. (DSUMF ¶ 11.)

Clay spoke to Johnson at 8:26 p.m. on April 3, 2016 and informed Johnson that his toilet did not work and contained feces. (*Id*. ¶ 10.) The toilet was fixed the next day at about 10:00 or 11:00 a.m. (*Id*. ¶ 10.)

**DISCUSSION**

This Court will grant summary judgment "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Hanover Ins. Co. v. Northern Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014). In determining whether factual issues exist, the Court must view all the evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Weber v. Univ. Research Assoc., Inc.*, 621 F.3d 589, 592 (7th Cir. 2010). The Court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986)).

To survive summary judgment, the nonmoving party must make a sufficient showing of evidence for each essential element of his case on which he bears the burden at trial. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797–98 (7th Cir. 2017). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Blythe Holdings, Inc. v. DeAngelis*, 750 F.3d 653, 656 (7th Cir. 2014) (internal quotation marks

5

omitted). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Johnson v. Manitowoc Cty.*, 635 F.3d 331, 334 (7th Cir. 2011) (quoting *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640–41 (7th Cir. 2008)).

The Eighth Amendment imposes a duty to "provide humane conditions of confinement" and "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see also Rice ex rel. Rice v. Corr. Med. Services*, 675 F.3d 650, 664 (7th Cir. 2012). Determining the violation of this constitutional right involves a two-fold analysis—the first question is "whether the conditions at issue were sufficiently serious so that a prison official's act or omission result[ed] in the denial of the minimal civilized measure of life's necessities;" and the second is "whether prison officials acted with deliberate indifference to the conditions in question." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (internal quotation marks omitted). In this case, Defendants seek summary judgment on two grounds: (1) they contend that Clay's non-functioning toilet did not amount to an objectively serious deprivation; and (2) they claim that they did not possess a sufficiently culpable state of mind.

### I.     Objectively Serious Condition

"[A]dequate toilet facilities 'are among the minimal civilized measure of life's necessities that must be afforded prisoners.'" *Akindele v. Arce*, No. 15 C 5952, 2017 WL 467683, at *4 (N.D. Ill. Feb. 3, 2017) (citing *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012)); *see also Mims v. Hardy*, No. 11 C 6794, 2013 WL 2451149, at *10 (N.D. Ill. June 5, 2013) (collecting cases and observing that "unsanitary conditions of confinement arising from broken plumbing" may rise to the level of a constitutional violation). A short-term breakdown, however,

6

where the inmate otherwise has access to drinking water and alternative bathroom facilities, does not violate the Constitution. *See Akindele*, 2017 WL 467683, at *4.

In this case, the record indicates that for five days Clay was without a functioning toilet, feces backed up into the toilet, and the toilet overflowed several times, requiring him and his cellmate to clean up the mess. The record is silent as to whether Clay had access to alternative toilet facilities. But it does indicate that Clay covered the toilet with a blanket to control the smell, yet the odor still caused him to vomit a couple of times.

Defendants argue that the conditions caused by the broken toilet were not extreme enough to result in a constitutional deprivation. Indeed, punishment in the constitutional sense requires "genuine privations and hardship over an extended period of time." *Bell v. Wolfish*, 441 U.S. 520, 542 (1979). However, in arguing that the conditions to which Clay was exposed were not sufficiently serious, Defendants provide only a perfunctory argument that relies on a case from the Northern District of Indiana, which in turn cites Sixth Circuit case law for the proposition that the Eighth Amendment does not require that prisoners enjoy "immediately available and flushable toilets at all times." *Ashley v. Mollenhauer*, No. 2:12–CV–468, 2013 WL 432907, at *3 (N.D. Ind. Jan. 31, 2013) (*citing Knop v. Johnson*, 977 F.2d 996, 1013 (6th Cir. 1992.)

The case law regarding whether non-functioning toilets violate a prisoner's Eighth Amendment rights focuses on access to alternative bathroom facilities and the conditions of the cell as a result of the non-functioning toilet. *See Hardiman v. Sheahan*, No. 96 C 3478, 1998 WL 89110, at *2 (N.D. Ill. Feb. 3, 1998); *see also Akindele*, 2017 WL 467683, at *4. In granting summary judgment, the *Akindele* court observed that there was no evidence in that case that the plaintiff was unable to maintain basic hygiene despite the clogged toilet. *Id.* at *4. Instead, the

7

court found the conditions in the plaintiff's cell—a clogged toilet that emitted foul odors but that was covered with a towel—fell short of the harsh conditions deemed unconstitutional in other cases. *Id.* (citing *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 2007) (finding a possible constitutional violation based on allegations that the walls of the prisoner's cell were smeared with human waste, the water was turned off, and the plaintiff was refused cleaning supplies)). By contrast, the record in this case is silent as to whether Clay had access to alternative bathroom facilities and whether he had access to cleaning supplies.

It is true that the unsanitary conditions to which Clay was exposed were not as serious as those in some other cases, such as *Vinning-El v. Long*, 482 F.3d 923, 923–24 (7th Cir. 2007) (reversing the district court's grant of summary judgment where an inmate spent six days in a cell with blood and feces on the walls without running water or cleaning supplies). But courts have recognized that "even limited exposure to human waste can constitute an unconstitutional condition of confinement." *Oswald v. Manlove*, No. 16-cv-991-PP, 2019 WL 464135, at *12 (E.D. Wis. Feb. 6, 2019); *see also Wheeler v. Walker*, 303 F. App'x 365, 368 (7th Cir. 2008) (observing that exposure to human waste not only raises health concerns but evokes "the more general standards of dignity embodied in the Eighth Amendment") (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001)).

Accordingly, this Court concludes that viewed as a whole a reasonable jury could find the conditions to which Clay was subjected serious enough to amount to a deprivation of his constitutional rights. Defendants thus have failed to establish that they are entitled to summary judgment on the ground that the conditions to which Clay was subjected were not objectively serious.

## II. Culpable State of Mind

To establish his claim, Clay must also prove that Defendants acted with deliberate indifference. *Townsend*, 522 F.3d at 773. "Deliberate indifference . . . means that the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Id.* An inmate must show more than mere negligence; he must show "that the official received information from which the inference could be drawn that a substantial risk existed, and that the official actually drew the inference." *Id.* Applying this standard here, Clay must show that Defendants were actually aware of the conditions resulting from his broken toilet but failed to take adequate steps to address them.

With respect to Johnson, the record indicates that Clay first spoke to him about the broken toilet at 8:26 p.m. on April 3, 2016, and the toilet was fixed the next day by 10:00 or 11:00 a.m. Under the undisputed facts, no jury could find that a fifteen hour (at most) delay in fixing the toilet amounted to deliberate indifference. Thus, the Court grants Johnson's motion for summary judgment.

As to Pfister, however, the record is not clear. Specifically, the record establishes that on March 30, 2016, Clay submitted to Pfister a grievance in which he complained about the issues with his toilet. Pfister concedes that he received the grievance, signaling knowledge of Clay's issue with his toilet. (*See* Def. Reply in Support of Summary J. at 6, Dkt. No. 86.) The grievance and lack of evidence of any response to it are sufficient to create a triable issue of fact on the element of deliberate indifference. *See Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996) (finding that "an inmate's letters to prison administrators may establish a basis for § 1983 liability" where "the communication, in its content and manner of transmission, gave the prison official sufficient

notice to alert him or her to an excessive risk to inmate health or safety" (internal quotation marks omitted)).

Clay's toilet remained broken for five days until Johnson intervened, and then it was fixed on April 4, 2016. Because the record is silent as to any action Pfister might have taken with respect to Clay's broken toilet and the resulting exposure to human waste, questions of fact remain. *Vinning-El*, 482 F.3d at 923–24 (reversing grant of summary judgment where inmate spent six days in a cell with blood and feces on the walls without running water or cleaning supplies). Clay also testified that he was forced to clean up the waste that overflowed into his cell several times during the period the toilet was not functioning. As noted above, "even limited exposure to human waste can constitute an unconstitutional condition of confinement." *Oswald*, 2019 WL 464135, at *12. Thus, questions of fact remain with regard to Pfister's action or inaction relating to correcting the conditions of confinement of which Clay complained. Accordingly, his motion for summary judgment is denied.

## CONCLUSION

For the reasons explained above, Defendants' motion for summary judgment (Dkt. No. 80) is granted in part and denied in part. The motion is granted with respect to Johnson; he is dismissed as a Defendant. However, the motion is denied as to Pfister; the claim against him shall proceed to trial.

ENTERED:

Date: March 19, 2020

Andrea R. Wood
United States District Judge